CHARLES S. BROWN et al., executors, &c.,

*v.*

CHARLES S. BROWN, individually, et al.

[Decided January 23d, 1907.]

1. The court will not, in advance, advise executors authorized to compromise debts due to the testator how they shall exercise the power, but they must, at their peril, exercise their own judgment with respect thereto.

2. Where a testator declared that no advancements should be charged against his children unless advances or charges should be made on his books against his children, a charge against a son, found on the books, must be treated as an advancement.

3. Where a testator set aside a certain sum for his wife for life, and provided that on her death two-tenths were to be paid to a son, and directed that two-tenths of the residue of his estate should be held in trust for the son for life, and, on his death, to his issue surviving, and the son was indebted to the testator, the son's indebtedness must be charged against the bequests made to him.

4. A testator provided that advances made to his children should not be considered unless the advances should be made on his books. On the books of the testator appeared a charge against a son, followed by the statement that same should not bear interest.—*Held*, that the indebtedness due to the estate from the son did not draw interest.

5. A testator directed that of the residue of his estate one-tenth should go to his daughter, and that the executors, on the written request of the daughter, should set apart to her the residence of the testator, on request therefor prior to the sale thereof, at a specified sum. The executors made a partial distribution of the estate, and set aside personalty to the daughter. Subsequently she requested the executors to set aside for her the premises mentioned.—*Held*, that if the daughter returned to the estate the personalty set aside to her, and the executors gave her the premises, no one could complain.

6. A testator gave the residue of his estate to his executors to take possession thereof, collect the rents, pay taxes, assessments and liens, and directed that the executors should set apart a specified sum for a trust fund, divide the residue into equal shares, some of which were given absolutely and others in trust. The testator left real estate unimproved, against which municipal assessments had been levied. The executors had not divided the residuary estate.—*Held*, that as to the assessment for municipal improvements there must be an equitable apportionment

between the tenants for life and the remaindermen, by the payment of the whole sum out of the principal, and providing that each year interest should be calculated on the amount paid, and deducted from the income.

7. Where a testator leaving real estate died June 30th, and the estate was subject to assessment for taxes as of May 20th in the name of the owner thereof at that date, the executors were required to pay the taxes out of the estate and charge the same against the principal.

8. A testator owned stock in a corporation, which, after his death, increased the authorized stock, and gave to the shareholders the right to subscribe to the increased issue. This right the executors sold for a substantial sum.—*Held*, that the sum thus received became principal, and did not go to the life tenants of the stock.

9. A testator owned a specified number of shares in a trust company, and after his death the stock of the company was increased and allotted to the shareholders. At the same time the company declared a dividend, and provided that the right to subscribe to the new stock and the right to receive the dividend should accrue simultaneously. The executors paid for the stock with the dividends.—*Held*, that the stock so purchased must be held to be a dividend as between life tenants and remaindermen.

10. Where a testator bequeathed stocks and bonds, which passed into the possession of the executors and trustees of his will, the executors and trustees, if continuing to hold the same in the exercise of good faith, will be protected from any losses by virtue of *P. L. p. 236*, providing that, when bonds and stocks come into the hands of executors or trustees under the will of a testator owning them, they shall not be accountable for any loss by reason of continuing to hold them, provided they exercise good faith and reasonable discretion.

11. Where a testator vested his executors and trustees with power to invest in improved and productive real estate, or in sound, productive securities, as they might deem best, the executors were not exonerated on investing money in stocks which depreciated and thereby caused a loss to the estate, as the authority conferred did not merely bind them to the exercise of good faith and reasonable judgment.

12. Where executors empowered to sell real estate of the testator employ real estate agents to procure purchasers of real estate, the commissions paid to such agents are payable out of the principal of the estate, and not out of the income.

Heard on bill, answer, replication and proofs in open court.

The complainants are executors and trustees under the will of Lewis B. Brown, deceased. The defendants are the persons interested in the estate of the testator.

The bill is filed to obtain a construction of the will in various respects, and to procure directions to the trustees concerning various matters respecting their trust.

The will was dated November 22d, 1898. Lewis B. Brown died on the 28th of June, 1900. The various questions will be dealt with under separate heads.

*Mr. Edmund W. Wakelee,* and *Mr. Wendell J. Wright* and *Mr. Edward V. Thornall* (of the New York bar), for the complainants.

*Messrs. Mabie & Maidment,* for the defendants.

GARRISON, V. C.

I.

Lewis M. Brown was the son of the decedent and owed money to his father. He is also a beneficiary under the will. It is necessary to construe the will and refer to the facts so as to arrive at the proper determination of the duty of the complainants in the premises.

The fifth paragraph of the will is as follows:

"To divide the rest, residue and remainder of my estate into ten equal parts or shares, and [to pay over certain of such parts or shares to named persons, &c.] to set apart two such equal parts or shares of my residuary estate, hold the same in trust, invest the same, and to receive the rents, issues and profits thereof, and to pay the net profits and income thereof to my son, Lewis M. Brown, during his natural life, and on his death, or if he should die before me, I direct the executors and trustees of this my will to transfer and pay over the whole of such two equal parts or shares of my residuary estate, with any unexpended income thereof, to the lawful issue of my said son, Lewis M. Brown, surviving him, *per stirpes,* and not *per capita,* as their own forever."

The fifteenth clause of the will is as follows:

"I hereby direct and declare it to be my will that no advances which have been made by me to any of my children  *  *  *  during my lifetime shall be charged against them, or either of them, or in any manner be considered as a part of the provisions hereinbefore made for them, or either of them, but that each of my said children  *  *  *  shall receive and enjoy the provisions hereinbefore made for them in all respects, as if such advances had not been made; provided, nevertheless, that if any security or written acknowledgment for any advances to, or payments in behalf of, any of said children  *  *  *  shall be held by me uncancelled at the time of my decease, or if any advances or charges shall be made

upon my books of account against said child, * * * the above provision shall not apply to the extent of such advances or charges, but such advances or charges shall be charged against, and be deducted from, the share of such child or grandchild in my estate."

Upon the books of the testator there was found a charge against his son, Lewis M. Brown, amounting to $35,616.08.

Lewis M. Brown is insolvent and nothing can be collected from him.

The fourteenth paragraph of the will is as follows:

"I authorize and empower my said executors, or such of them as shall qualify, and the survivors and survivor of them, to compromise, compound and discharge any debt or debts due to me at the time of my decease upon such terms as they shall deem best, and I hereby expressly direct and declare that my said executors shall not be held personally liable in any manner for any debt or debts so compromised or discharged."

The complainants desire to be instructed as to their duties in respect to this matter.

*First,* they ask whether, under the fourteenth paragraph of the will, they are empowered to discharge the debt due by Lewis M. Brown to the estate.

While executors have the power to compromise, compound or release claims against the estate at common law, and in many jurisdictions by statute, and while the power may be conferred as in this case, by will, I am of opinion that the court should not, in advance, advise them how they should exercise their discretion, and would, when it had been exercised, approve or disapprove of their conduct, after considering all the facts, making the test whether their action was for the best interest of the estate or not.

The general principles and the authorities will be found collected in *11 Am. & Eng. Encycl. L. (2d ed.) 926-929,* inclusive.

The court, in the matter of giving instructions or directions to trustees under a will, exercises its discretion as to whether it will advise or direct upon the matters submitted to it, and I do not think it would be discreet for the court to advise these complainants to make a compromise or to release Lewis M. Brown from whatever obligation he is under to the estate. I think the com-

plainants, at their own peril, must use their own judgment with respect to the power to compromise, compound and release. In the event of their not exercising their power, and of their refusing to compromise, compound or release the obligations of Lewis. M. Brown to the estate, it becomes necessary to deal with the other provisions of the will above quoted.

I am of opinion that, by reason of the charge found on the books of the testator against Lewis M. Brown, that sum must be dealt with in accordance with the provisions of the fifteenth clause of the will above quoted. That clause provides that any such advance or charge "shall be charged against and deducted from the share of the child so charged." It becomes, therefore, necessary to determine what share Lewis M. Brown has in the estate of Lewis B. Brown, deceased. Under the fourth clause of the will $60,000 was set aside for the wife of the testator, of which she was to have the income for life, and upon her death the principal was to be divided into ten equal parts or shares, of which two were to be paid to Lewis M. Brown. The wife of Lewis B. Brown is dead, and Lewis M. Brown therefore is entitled to $12,000 under this provision.

I am of opinion that the amount charged on the books of the testator against Lewis M. Brown must be charged against or deducted from this sum. Since the charge is larger than this sum by $24,000, it is necessary to determine what other share Lewis M. Brown has in this estate. Such other share arises under subdivision C of paragraph 5 of the will, which has been quoted above. Thereunder Lewis M. Brown has the income for life of two-tenths parts or shares of the residuary estate. The income upon such parts or shares is given to him for life, vesting in his lawful issue.

I am of the opinion, therefore, that against such share the remainder of the amount of the advancement to Lewis M. Brown must be charged. I reach this conclusion because I cannot find any other part or share of the estate that is left to Lewis M. Brown. Under the clause just mentioned he was not left the two-tenths of the residuary estate. These two-tenths were left to his lawful issue. That which was left to him was the income

thereof, and that, in my view, constitutes his share of the estate under that clause.

I am of opinion that the amount appearing on the books as charged against Lewis M. Brown does not bear interest, because in said books the testator had written that the charges therein contained against his children were not to bear interest. Whether or not interest is collectible is a matter of agreement or intention, and the intention clearly appears here that no interest is to be charged.

## II.

Another matter upon which instructions are asked arises under the eleventh paragraph of the will, which reads as follows:

"Whereas, I now own the house and lot now known by the number seventy-three West Fifty-fifth street, in the city of New York, borough of Manhattan; and whereas, the same is now occupied by my daughter, Helen B. Coles, the executors and trustees of this my will, the survivors and survivor of them, shall, upon the written request of my daughter, Helen B. Coles, acknowledged in the same manner as deeds are required to be acknowledged, set aside and include in the one-third share of the two-tenths part of my residuary estate hereinbefore directed to be held in trust during the lifetime of my said daughter, Helen B. Coles, and as a part of said share, the said house, number seventy-three West Fifty-fifth street, provided such request is made prior to a sale of such house and lot by my said executors and trustees, such house and lot to be taken and valued at twenty-five thousand dollars."

The complainants, acting under the authority of the will, on the 10th of August, 1900, made a partial distribution of the estate, and set aside as part of the share above mentioned of Helen B. Cole's forty shares of stock in the Consolidated Gas Company of New York at the inventoried value of $6,960, and thereafter received, as trustees, the dividends thereon, amounting in all to $720. On December 31st, 1902, the house not having been sold, Helen B. Coles, complying in every particular with the paragraph of the will just quoted, requested the complainants to set aside and include in the share to be held for her the house and lot above mentioned. It being uncertain whether or not the share to be set aside would exceed the $25,000 at which

the house was to be valued, the complainants refused to comply with the request unless Helen B. Coles should return the dividends received by her on the gas stock, and should authorize the complainants to return to the general estate the gas stock which had been set apart as part of her share and should also pay whatever had been expended by the complainants upon the real estate by way of taxes, water rents, &c. They set out that the authorization to them to return the gas stock to the general estate, or rather to take it out of the share set aside for Mrs. Coles, was given by everybody then *in esse,* and that since that time a child has been born to one of the beneficiaries, and there is a possibility of other children being born who will have interests, and they therefore seek a ratification of their action.

I cannot see how the court can do any more than say that if the share to be set aside for Mrs. Coles exceeded $25,000 the executors have no choice but to comply with her request, and if, previous to her making such request, something else had been set aside for her share, and she returns to the estate all that she received upon that something else so set aside, no one can be heard to complain.

### III.

Instructions are sought with respect to the payment of taxes upon real estate of which the decedent died seized, assessments for municipal improvements levied against said premises since the decease of the testator, and fencing required to be placed around certain of the property by the board of health of the city of New York.

The will, after making certain bequests, in the tenth clause provides as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate, both real, personal and mixed, and wheresoever situated, of which I shall die seized or possessed, or to which I may be entitled in any manner at the time of my decease, to my executors and trustees * * * for the following purposes:

"1. To enter into and take possession of my said estate, real, personal and mixed, and to collect and receive the rents, income, issues and profits thereof, and to pay and discharge all mortgages, taxes, assessments, and

all other liens and encumbrances upon the same whensoever the same become due.

"2. To sell, at public or private sale, at such times and in such parcels, and for such price and upon such terms of cash or credit as they shall deem for the best interest of my estate, such of my real estate and such of my personal property as they shall deem proper to dispose of, and for that purpose, and for the purposes of carrying out the provisions of this will, I hereby give said executors and trustees * * * full power of sale and disposal of the same."

Power of investment and reinvestment is then given. The trustees are then required to set apart $60,000 for a certain trust fund, and by the fifth subdivision of this paragraph are required "to divide the rest, residue and remainder of my estate into ten equal parts or shares." Some of these tenths are given absolutely and others are to be held in trust.

The executors have not made an actual division of the residuary estate into tenths, having only set apart certain stocks, and have otherwise held the residuary estate as a whole.

The decedent left a large estate, and part of the same consisted of vacant lots of land in the city of New York, unimproved in any way and unproductive of income. Municipal assessments for improvements of various kinds have been levied upon this property since the death of the testator. Taxes have also fallen due upon the said property. The board of health of New York required certain of the lots to be fenced in. The executors have paid all of the above imposts, and now seek directions as to how to charge the same in their accounts.

Since the residuary estate is not divided and is held by the trustees awaiting favorable opportunity to convert it in divisible property, it must be dealt with as a whole. *Holcombe* v. *Holcombe, 29 N. J. Eq. (2 Stew.) 597 (Court of Errors and Appeals, 1878)*; *Outcall* v. *Appleby, 36 N. J. Eq. (9 Stew.) 73* (at *p. 80*) *(Chancellor Runyon, 1882)*; *Brearley* v. *Molton, 62 N. J. Eq. (17 Dick.) 345* (at *p. 351*) *(Chancellor Magie, 1901)*, and the ordinary taxes and expenses of upkeep are to be paid out of the income derived from the estate. *Howard* v. *Francis, 30 N. J. Eq. (3 Stew.) 444 (Chancellor Runyon, 1879)*; *Murch* v. *Smith Manufacturing Co., 47 N. J. Eq. (2 Dick.) 193 (Vice-Chancellor Green, 1894)*; see cases *supra*.

With respect to the assessments for municipal improvements there should be an equitable apportionment between the tenants for life and the remaindermen. *Holcombe* v. *Holcombe, supra; Outcalt* v. *Appleby, supra; Pratt* v. *Douglas, 38 N. J. Eq. (11 Stew.) 516* (at *p. 542*) (*Court of Errors and Appeals, 1884*).

The court of errors and appeals, in the case of *Jonas* v. *Hunt, 40 N. J. Eq. (13 Stew.) 660 (1885)*, held that the proper apportionment was interest on the amount invested by way of assessment, to be paid by the life tenant during his tenure. Therefore the whole sum should be paid out of principal, and each year interest should be calculated upon the amount paid, and the sum thus arrived at should be deducted from the income.

With respect to the fencing, I think a similar rule should be adopted; that being an impost required by the government, and presumably for the benefit of the estate, and not being of any present benefit to the life tenant any more than to the remainderman, I think the same rule should apply.

## IV.

The next matter upon which instructions are sought concerns taxes for the period 1899-1900 assessed against the decedent upon lands owned by him at the time of the assessment.

There were such lands in the State of New York and also in the State of New Jersey. The decedent, as before stated, died on the 28th day of June, 1900.

In New Jersey the assessment is as of the 20th of May. *State* v. *Hardin, 34 N. J. Law (5 Vr.) 79* (at *p. 80*) (*Supreme Court, 1869*); *State* v. *Town of Union, 36 N. J. Law (7 Vr.) 309* (at *p. 311*) (*Supreme Court, 1873*); *State* v. *Shute, 43 N. J. Law (14 Vr.) 414* (at *p. 416*) (*Supreme Court, 1881*).

The land is required to be assessed in the name of the owner thereof on that date. *State* v. *Hardin, supra.*

If not assessed in the name of anyone, the assessment is invalid. *State* v. *Vanderbilt, 33 N. J. Law (4 Vr.) 38* (*Supreme Court, 1868*).

If assessed in the name of the person who subsequently became the owner after the period within which the assessment could be made, it is invalid as against this last-named person. *State* v. *Hardin, supra.*

The provision requiring the assessment to be made in the name of the owner has been by the supreme court stated to be in pursuance of the "intention of the law that the person or persons who owned the real estate on the day when by law the assessment is to commence shall be máde personally responsible for the tax." *State* v. *Vanderbilt, supra.*

While it has been held that the tax on real estate is not, properly speaking, a debt, and cannot be enforced by action of debt, and can only be collected in the mode prescribed by statute (*Camden* v. *Allen, 26 N. J. Law (2 Dutch.) 398 (Supreme Court, 1857)*), it is, I think, clear from the citations above that the said tax must be held to be a liability of the owner to which he must respond in the manner prescribed by statute.

One such manner is by a distress upon his goods and chattels. *Gen. Stat. p. 3284 § 18; Present Stat., P. L. 1903 p. 422 § 43.*

I am of opinion, therefore, that the decedent was liable for the tax for the year 1899-1900 assessed against the real estate owned by him on the 20th of May, 1900, and that his executors must pay the same out of the estate, and it will, of course, therefore, be charged against principal and not income.

The court of appeals of New York has taken this view of the law, and also holds that in New York City taxes on real estate are assessed as of the second Monday of January in each year. *Matter of Babcock, 115 N. Y. 450.*

It is stated as a general principle that taxes on real estate which accrue during the lifetime of the owner are payable by the personal representatives. *11 Am. & Eng. Encycl. L. (2d ed.) 946;* cases in *note 3; 2 Supp. 840 nole 3.*

Therefore the executors must also pay from the estate and charge to principal the taxes assessed upon the real estate owned by the decedent in the city of New York on the second Monday of January, 1900.

## V.

The next head upon which instruction is sought is with respect to various instances in which the testator had stock in corporations, which corporations, after his death, increased the authorized capital stock of the company and gave to the shareholders the right to subscribe to the increased issue, which rights were sold by the executors for substantial sums of money, and the question in each case is whether the money realized from the sale of these rights becomes principal or goes to the life tenants.

Under the cases of *Eisner's Appeal, 175 Pa. St. 143* and *Matter of Kernochan, 104 N. Y. 618, 630,* it should go to principal.

## VI.

The next matter concerning which instructions are sought is with respect to dividends upon shares of stock owned by the testator at the time of his decease. The proofs show various shares of stock held by the testator upon which dividends were declared and paid after the decease of the testator. The proofs also show the following facts with respect to the stock of one of such companies: The testator owned twenty-five shares of the capital stock of the Title Guaranty and Trust Company. On September 16th, 1902, the stock of this company was increased and the increase was allotted to the shareholders, each being given the right to subscribe to sixty per cent. of the number of shares held. At the same time the company declared a dividend of sixty per cent. and provided that the right to subscribe to the new stock and the right to receive the dividend should accrue simultaneously. The complainants took the stock and paid for it with the dividend. I think that this must be held to be a dividend and the new stock must be held as if it were a dividend.

The rule to be applied, as between life tenants and remaindermen, with respect to dividends, has been settled in this state by the case of *Lang* v. *Lang's Executors, 57 N. J. Eq. (12 Dick.)*

*325* (*Court of Errors and Appeals, 1898*), followed in this court by *Lister* v. *Weeks,* 60 *N. J. Eq.* (*15 Dick.*) *215* (*Vice-Chancellor Stevens, 1900.*) (at *p. 225*); *affirmed, 61 N. J. Eq.* (*16 Dick.*) *675.*

In the case first cited the court (at *p. 327*) says: "The underlying principle applicable * * * is that no corporate dividend declared after the right to the income has become severed from the ultimate ownership of the stock upon which such dividend is declared belongs in equity to the person entitled to income except so far as it is derived from the earning of the stock after such severance."

After alluding to the distinction which had been made in previous authorities between extraordinary dividends and ordinary or current dividends with respect to apportionment of those of the first class and not of the others, the court (at *p. 328*) says that it cannot "assent to the idea that some dividends should stand on a different footing from others," and points out that to hold that "where a life estate begins one day before a dividend is declared the entire dividend shall go to the life tenant may be convenient, but certainly is unjust."

At *p. 329* the court applies the principle. That principle, as before stated, requires apportionment.

There must, however, be evidence before the court of the period for which the dividends were declared, the time of the previous dividend, the source from which it is derived, whether earnings currently made or surplus wholly earned before the decease of the stockholder, and other like matters. There will have to be a reference to a master to take this testimony and report thereon.

## VII.

The next matter concerning which instructions are sought concerns investments.

These are of two characters—*first,* those stocks and bonds of corporations which were owned by the testator and passed into the possession of the executors and trustees. With respect to these the act of March 23d, 1899 ( *P. L. 1899 p. 236*), applies,

and protects the executors and trustees if they continue to hold the same in the exercise of good faith and reasonable discretion. *Coddington* v. *Stone, 36 N. J. Eq. (9 Stew.) 362 (Chancellor Runyon, 1883)*; *Parker* v. *Glover, 42 N. J. Eq. (15 Stew.) 559 (Chancellor Runyon, 1887)*.

The will in the case in hand vests the executors and trustees with power

"to invest all moneys left by me and the proceeds of the sales of my estate in improved and productive real estate, or in sound, productive securities, such as they may deem best, or in both real estate and securities. The authority to sell and reinvest shall apply to all investments made by them as my executors and trustees."

While I am personally inclined to the belief that it was the intention of the testator in this case to clothe his executors and trustees with discretion in the exercise of which they might invest the moneys in stocks or securities not authorized by law, and be only held to the exercise of good faith and reasonable judgment, I cannot, in view of the decisions of our courts, safely hold that the complainants in this case are thus protected. In the case of *Ward* v. *Kitchen, 30 N. J. Eq. (3 Stew.) 31 (Chancellor Runyon, 1878)*, the court held that a provision that "my executor to invest in productive funds upon good securities" would be construed (*p. 36*) "to mean investment on such securities, and on such securities only, as are regarded by the court as proper for the investment of trust funds." See, also, *Woodruff* v. *Ward, 35 N. J. Eq. (8 Stew.) 467 (at p. 471) (Ordinary Runyon, 1882)*.

While it is true that in each of the cases cited the court finds from the will evidence that the testator did not include in his designation of securities in which his funds might be invested stocks of companies, yet I think it unsafe to hold, in view of these decisions, that general language of this sort is sufficiently indicative of intention to exonerate the executor or trustee if he does invest moneys in stocks which depreciate and cause a loss to the estate.

If the complainants desire an affirmative authorization by this court for their investments they must appeal to the court in this or some proceeding and lay all the facts before the court.

I do not decide, because it is not now necessary, whether this court can or will authorize investments in stocks of companies. The act of 1899 (*p. 236,* heretofore cited) specifies the securities in which trustees may invest, but provides that the act shall not apply where a court having jurisdiction of the matter specially directs the manner in which trust funds shall be invested.

I cannot, in the present state of the proofs in this case, make any special direction, whatever power to do so I may have. Provision may be made in the decree for further application to the court, and under such permission this matter may be again brought to the attention of the court.

## VIII.

Another matter concerning which instructions are sought is, with respect to commissions, paid by the complainants to real estate agents and others for procuring purchasers of real estate of the trust sold by the complainants.

I am of opinion that these commissions are payable out of principal.

## IX.

Instructions are also asked concerning the costs, expenses, &c., of this proceeding.

That will be settled in the decree, and it is not necessary to refer to the matter in this opinion.

## X.

Another head is with respect to a small item paid annually by the executors for the care and maintenance of the plot in which the decedent is buried in Greenwood cemetery.

There is no evidence before the court as to whether this was an obligation undertaken by the decedent, and, as such a debt of his, or whether it is a liability incurred by the executors them-

selves, or what the fact is. If there was no obligation undertaken by the testator in this respect, and the executors have expended this small sum annually for the care of the plot, I do not see how it can be charged against the estate. However, this matter may also go to the master to take the proofs.

The decree will provide that the account of these trustees shall be taken and stated in this court, and a master will be appointed to take and state the same, and to said master will also be referred the various questions alluded to in the course of the opinion upon which further proofs are to be taken.

I will advise a decree as above indicated.