JEANETTE BALLANTINE et al., trustees,

*v.*

ALICE J. YOUNG et al.

1. Where a corporation which had accumulated a surplus several times greater than its capital, in addition to its usual dividend, declared a two hundred per cent. dividend, at the same time giving the stockholders power to subscribe at par for a new issue of stock of the same amount, the dividend was a cash dividend, and not a stock dividend.

2. While ordinary cash dividends, where stock is bequeathed to one for life, remainder to another, go to the life tenant, the extraordinary dividends are apportioned between him and the remainderman; and hence, where a corporation which had accumulated a surplus several times greater than its capital, in addition to its regular dividend, declared a two hundred per cent. dividend, at the same time giving the stockholders the power to subscribe for a new issue of stock of the same amount, the dividend was extraordinary, and should be apportioned in the ratio that the surplus at testator's death bears to the surplus accumulated thereafter up to the time it was declared.

3. Where trustees under a will held the legal title to stock in a corporation which paid very large dividends, and had accumulated a very large surplus, the trustees were, upon the declaration of an extraordinary cash dividend, justified in investing the dividends in a new issue of stock, which the corporation at the same time offered its stockholders at par.

4. The right to subscribe for new shares which command a premium is considered a part of the principal, where corporate stock has been bequeathed to one for life with remainder to another.

5. Where trustees under a will were authorized to continue any investments or securities, and part of the estate consisted of stock in a corporation which, to treble its capital stock, in addition to the regular dividend, declared a two hundred per cent. cash dividend, and gave all shareholders the right to purchase two new shares for each share they then owned, the trustees having purchased such shares were entitled to hold them; for by investing a cash dividend in stock they merely preserved their proportionate interest in the property, and did nothing more than continue their investments.

6. Where corporate stock was bequeathed to one for life, remainder to another, and the corporation made a stock dividend, the stock so issued was held to be an extraordinary dividend, to be apportioned between the life tenant and the remainderman.

7. In apportioning a stock dividend between the life tenant and the remainderman, the apportionment should be made on the basis of the company's accounts.

8. Where corporate stock, which was bequeathed to one for life and remainder to another, secured the holder the right to purchase on favorable terms shares of another corporation, that right is capital belonging to the remainderman.

On bill.

*Mr. John O. H. Pitney,* for the complainants.

*Mr. Gilbert Collins,* for the remaindermen.

*Mr. Chauncey G. Parker,* for the life tenants.

STEVENS, V. C.

This is a bill filed by trustees of the will of John Ballantine asking for directions.

The testator owned twenty-five shares of the Central Trust Company of the par value of $50 each. Its capital stock was $1,000,000. Its undivided surplus at the time of testator's death (April 27th, 1895), $5,776,113.70. It paid regular semi-annual dividends at the annual rates of, first, fifty per cent., then sixty per cent., and then eighty per cent. On April 28th, 1909, the surplus had increased to $15,579,696.65. In June, 1909, its capital stock, by appropriate action on the part of the

directors and stockholders, was increased to $3,000,000. The stockholders were given the right to subscribe at par for the new issue of $2,000,000—that is, each stockholder might subscribe for two new shares for every old one he held. Contemporaneously, a special or cash dividend of two hundred·per cent. was declared. The trustees took this dividend and used it to pay for the new stock, which stock they still hold.

By his will, testator gave his residuary estate to trustees in trust (speaking generally) to pay over a part of the income to his children during their respective lives, and at their deaths to divide certain parts of the principal among his grandchildren.

The first question is, who is entitled to the dividend of the Central Trust Company issued under the circumstances above described—the life tenants or the remaindermen?

It seems to me plain that the dividend is a cash dividend and not a so-called stock dividend. There is nothing either in the substance or form of the transaction that indicates that it was other than what it purports to be. *Gray* v. *Hemenway, 92 N. E. Rep. 31.* It is true that the company, at the time it declared the dividend, gave an option to subscribe to the new stock, and that its officers anticipated that the new stock would be paid for with the cash dividend, but it did not attempt to compel the subscription. The stockholder could do as he pleased. He would, almost as a matter of course, elect to take the stock with the money thus provided; for the stock was selling for many times more than its par value.

Ordinary cash dividends go, of course, to the life tenant. Is this an ordinary or an extraordinary dividend? It seems to be extraordinary for three reasons—*first,* it was declared, in addition to the regular dividend; *second,* it was much larger, exceeding the net profits made in the preceding year, and *third,* it was evidently made for the special purpose of enabling the stockholders to avail themselves of the new subscription. If these concurring circumstances do not make the dividend extraordinary, for the purpose of apportionment, I do not know what could make it so. The distinction has been adverted to, apparently, with approval by the court of errors and appeals in the *Lang Case. 57 N. J. Eq. (12 Dick.) 326,* and I do not feel at liberty to

disregard it. I, therefore, think, on the doctrine of that case, that the dividend is apportionable in the ratio that the surplus at testator's death bears to the surplus accumulated thereafter up to the time the dividend was declared.

The trustees, as a matter of fact, took the dividend and invested it in the new shares, which sell at a very large premium. They were justified in doing so. *Bouch* v. *Sproule, 12 App. Cas. 385; Malam* v. *Hitchens (1894), 3 Ch. 578;* and so the next question is, to whom does this premium belong, to the life tenant or to the remaindermen? It has been held repeatedly that the right to subscribe for new shares, which command a premium, is a part of the principal and belongs to the latter. *DeKoven* v. *Alsop, 205 Ill. 309; Davis* v. *Jackson, 152 Mass. 58; Green* v. *Smith, 17 R. I. 28; Hite* v. *Hite, 93 Ky. 257; Eisner's Appeal, 175 Pa. 143; Richmond* v. *Richmond, 108 N. Y. 298; Brown* v. *Brown, 72 N. J. Eq. (2 Buch.) 667.* That the trustees have actually subscribed for and taken the shares cannot alter the legal rights of the parties. By giving the life tenant a charge upon the stock thus held, for his proportion of the cash dividend (*Malam* v. *Hichens, supra*), the relative rights of the parties are easily adjusted. So much of it as may be needed will be sold to satisfy the charge.

The next question is whether the trustees have the right to hold the stock that may remain unsold after the charge is satisfied. It seems to me that having the right to take the stock, which, after it was taken, gave them no greater interest in the company than they had before—merely changed the *form* of their holding—they have the right to retain it. The authority given by the will is "to continue any investments or securities." By agreeing to take the company's stock in exchange for the company's money they are merely preserving their proportionate interest in the property, and so doing nothing more than continuing their investment in it.

The next question relates to the so-called fifteen per cent. stock dividend of the Delaware, Lackawanna and Western Railroad Company. This represents surplus earnings invested in the stock of two branch roads now merged with the main road, and about $3,000,000, applied in 1907, to the payment of matur-

ing bonds issued as part of the capitalization. The whole sum represents surplus permanently devoted to capital account. To whom does this dividend belong? It is strongly contended that it belongs to principal. I feel compelled, however, by the state of the authorities to hold that it is, in part, income, and that it should be apportioned between the life tenant and the remaindermen. While the case of *Van Doren* v. *Olden, 19 N. J. Eq. (4 C. E. Gr.) 176,* was somewhat, in other respects, shaken by the decision in the *Lang Case,* it was not disapproved on this point. On the contrary, it was, apparently without much or any discussion, followed by the court of errors and appeals in *Ashhurst* v. *Potter, 29 N. J. Eq. (2 Stew.) 625.* While this latter case stands, there cannot be any doubt as to what this court must do. Since it was decided, the question has undergone discussion by the supreme court of the United States, in *Gibbon* v. *Mahon, 136 U. S. 549,* and by the courts of last resort in England, in Massachusetts, in Illinois and other New England states, in all of which it has been held that issues of stock based on earnings are part of the principal. On the other hand, the court of appeals of New York, in *McLouth* v. *Hunt, 154 N. Y. 179,* and some western and southern state courts have followed Pennsylvania in giving stock dividends to the life tenant. As a matter of logic, it is difficult to resist the reasoning leading to the conclusion that stock dividends are, in fact, principal; for the life tenant, as is universally held, is not, in the absence of fraud, or improper conduct, entitled to the earnings until they are distributed. They are not, in fact, distributed, but, on the contrary, put permanently into capital account when new stock is, without any money equivalent, allotted to the whole body of stockholders. But discussion is out of place, for *Ashhurst* v. *Potter* is, as I have said, controlling. I would merely add that in most cases, at least, stock dividends can hardly be called regular or ordinary dividends. They must, as a rule, be extraordinary. They represent no particular part of the earnings or surplus. Like all the other stock, they represent not only surplus but the entire property of the company. Being extraordinary, they must, according to the rule of the *Lang Case,* be apportioned where there has been a surplus accumulated before testator's death.

I think, in the absence of fraud, or some very special circumstance, the apportionment should be made on the basis of the company's accounts. To apportion them according to the judgment of an expert or of the court as to whether the various items of disbursement are chargeable to current or capital, would be practically impossible. Proof on the one side would necessitate proof on the other. Even if the court, in the case of a foreign corporation, had power to compel exhibition of a multitude of items, stretching perhaps over a series of years, the length of time required for the examination, the expense of it, the doubt, after all, whether items, *e. g.,* relating to the cost of new bridges, new rails, new machinery, new equipment, were properly chargeable to one account or the other, or if to both, in what proportion, would of themselves be prohibitive of the inquiry.

I have discussed another phase of the question of stock dividends in *Day* v. *Faulks, ante p. 66,* in an opinion filed contemporaneously with this. What I said in that case may, to a certain extent, apply here.

For the reasons already given, the extraordinary cash dividend of fifty per cent. paid by the Delaware, Lackawanna and Western Railroad Company must also be apportioned. The option to subscribe to shares of the coal company is, evidently, capital. It was the right to purchase on favorable terms a new thing. If an option to subscribe to new stock of a corporation, whose stock the trustees hold, is capital, *a fortiori,* is an option to purchase stock they do not hold.