This is a bill for the construction of the will of Emily H. Koehler. The paragraphs of the will which the court is asked to construe are as follows:
"Fifth. All the rest, residue and remainder of my estate, both real and personal, of whatsoever kind and wheresoever situate, including all stocks, bonds, evidences of debt and securities whatsoever, I give, devise and bequeath to my executors hereinafter named, in trust, nevertheless, upon the following terms and conditions, and to and for the following uses and purposes, that is to say:
"1. To hold all my shares of stock of the Standard Oil Co. as trustee during the life of the trust hereby created * * *; to collect all annual or other dividends or income arising or accruing from said stock, and to apply the same from time to time to the purposes of the trust as hereinafter set forth * * *."
By section 2 of this paragraph the testatrix made certain disposition of her real property in trust.
By section 3 of this fifth paragraph of her will the testatrix provides for an annuity for her sister, who was deceased before the filing of the bill.
By the fourth and fifth sections of this fifth paragraph of her will the testatrix makes provision for the distribution of the income and corpus of the trust estate, and we quote therefromverbatim as follows:
"4. During the life of my said sister, unless she shall survive all of my children, to divide the remainder of the said rents, interest, dividends or other income into four equal parts during the life of the *Page 143 
trust hereby created, and after her death, if she shall not survive all of my children, to divide the whole of the said rents, interest, dividends or other income into four equal parts and pay the same until the death of the last survivor of my four children hereinafter named, as follows: One part to my adopted son George H. Koehler; one part to my daughter Emily H. Greenough, widow of Walter Greenough; one part to my daughter Julia Noble, wife of Nicolson Noble, and one part to my son Herman Koehler. On the death of each of my said children who shall die before the last survivor of them, his or her share of said income shall be paid in equal proportions to his or her heirs of the body per stirpes and not per capita, during the continuation of this trust. If any of my children die leaving no issue his or her share shall lapse and be divided among the other then surviving beneficiaries, in like manner as above provided.
"5. On the death of the last survivor of my said four children to divide the principal of said trust fund into four equal parts, and divide one of said parts equally among the heirs of the body of each of my said children per stirpes and not per capita.
But if there be then no issue surviving of any one or more of my said children, then the share of his or her issue shall lapse, and the said trust fund shall be divided into only so many equal parts as shall be necessary to give one part to the then surviving issue of each of my children."
From the proofs submitted it appears that the testatrix left her surviving her adopted son, George H. Koehler; her daughter Emily H. Greenough, her daughter Julia Noble, and her son, the complainant. Her sister, although she survived testatrix, is now deceased.
The daughter Julia K. Noble, mentioned in the will, after the death of testatrix, married one Louis W. Merritt and thereafter departed this life intestate. Mrs. Merritt, now deceased, left her surviving the following children: Nicolson Noble and Daniel Noble and Elsie Noble Walsh. Mrs. Walsh has two infant children, Jean Noble Walsh and Robert Everett Walsh.
The daughter Emily H. Greenough has the following children: Walter Greenough, Emilie C. Stehli, Margaret J. King and Kathryn G. Hall.
The said Margaret J. King has three infant children — Margaret Greenough King and Emilie Mary King and Elizabeth G. King.
The said Kathryn G. Hall has two children — Kathryn Leighton Hall and Anne G. Hall. *Page 144 
The said Emily C. Stehli has an infant child, Frances Greenough Stehli.
The said George H. Koehler, the adopted son of the testatrix, has two children — Elsie Henrietta Koehler and Gertrude Helen Koehler.
The complainant, Herman J. Koehler, the son of the testatrix, has three children, to wit: Herman J. Koehler, Jr., Emily Wilhelmina Koehler and Hans Vann Koehler.
Among other assets of the estate were one hundred shares of the Standard Oil Company of New Jersey. In the year 1911, after the probate of the will of the testatrix, by order of the Supreme Court of the United States, the Standard Oil Company of New Jersey distributed shares of stock of subsidiary companies held by it among its stockholders in proportion to their holding in said company. All these shares have been retained as an investment by the executor and trustee by order of the orphans court.
The first question to be considered is whether the stock of the subsidiary companies distributed as above stated shall be declared to be income or corpus of the trust estate. There does not seem to be any case in New Jersey directly in point.
However, the leading case in New York is United States TrustCo. v. Heye, 224 N.Y. 242. The testator in this case, who died in 1899, created a trust by his will for the benefit of his children. At the time of his death the testator owned certain shares of the capital stock of twenty corporations, which had previously constituted the Standard oil trust created by agreement in 1882. This trust has been dissolved and the certificates for these shares were delivered by the executrix of the will to the trustee on May 10th, 1899. In that year the Standard Oil Company of New Jersey increased its capital stock for the purpose of taking over and absorbing the other standard oil concerns. Accordingly, the trustee surrendered to the Standard Oil Company of New Jersey the certificates of stock in the twenty companies and received in return shares of common stock of the Standard Oil Company of New Jersey. At this time the Standard Oil Company also owned and controlled other subsidiary companies and thereafter *Page 145 
acquired more, so that in December, 1911, it owned and controlled all or a majority of the stock of thirty-three companies in the oil business.
In the action brought by the United States government against the Standard Oil Company it was decreed in 1911 that the business as conducted was an unlawful combination, and the Standard Oil Company of New Jersey was restrained from exercising any control over the voting of stocks of the various companies. The decree provided that the defendants were not prohibited thereby from distributing ratably to the stockholders of the principal company the shares to which they were equitably entitled in the stock of the defendant corporations. The directors of the Standard Oil Company thereupon distributed ratably to the stockholders the shares of stock of each of the corporations owned by the New Jersey Company. On December 1st, 1911, all the stocks were thus distributed except the stock of the Anglo-American Oil Company, which was distributed on January 20th, 1912.
The plaintiff in this case, as trustee, received his proportion of stock in some thirty-three different companies.
When the United States Trust Company, as trustee under the will of Mr. Heye, made an accounting, the life beneficiaries insisted that the entire distribution of stock made by the Standard Oil Company of New Jersey in December, 1911, and January, 1912, belonged to them as representing a distribution of profits, leaving the corpus of the trust of the same value as at the time of its creation.
In the course of the opinion of the New York court of appeals (at p. 252) the court says:
"The idea prevailing with these claimants seems to have been that the value of the principal at the time of the creation of the trust determines the rights of the life beneficiaries; that so long as the principal is in no way depleted or lessened, all the subsequent increase in value must be categoried as income, whether distributed as such or not."
After referring to Matter of Osborne, 209 N.Y. 450, 477, the court proceeds as follows (at p. 253): *Page 146 
"This does not mean that the principal of the trust fund is to remain at the same value, but that all increase belongs to the life beneficiaries. While the corpus of the fund may not be depleted, yet the corpus may accumulate or increase, and until there is some division in the nature of a dividend payable out of accumulated earnings or profits, there is nothing that can be awarded as income to the beneficiaries."
Again the court says (at the bottom of p. 254):
"The fundamental principle involved in these questions is, whether there has been a distribution or division of the earnings, profits or accumulations of the corporation. Until there has been such division, the life tenant is not entitled to any increase in the value of the principal of the trust fund, or the capital and assets of the corporation, shares of which constitute the trust fund. But when there has been a division of the corporate property, no matter what form it may take, that part thereof, which consists of accumulated profits or earnings, belongs to the life tenant, and that which is capital to the remainderman. Each case, necessarily, is determined by its own facts."
The case thereupon proceeds to consider the facts of the case in relation to the principle laid down (at the bottom of p.255) and says:
"Applying the rule as stated to the distribution made in December of 1911 by the Standard Oil Company of New Jersey, it is plainly to be seen that, as to the companies in existence at the time of the creation of the trust, there was no payment of a dividend or division of profits or distribution of surplus, although the shares of stock returned and the New Jersey stock retained by the trustee may have greatly increased in value. The company gave back to the trustee what it had formerly possessed and also what had been represented in 1899 by the Standard Oil stock [New Jersey] owned by the testator. The trustee had exchanged the stock in twenty companies for the stock of the Standard Oil Company of New Jersey, which thereafter represented these. In December, 1911, the Standard Oil Company gave back seventeen of the twenty stocks, and thereafter the *Page 147 
Standard Oil certificates no longer represented the interests of the seventeen. Neither did they continue to represent the seventeen other stocks also distributed to the trustee, which in 1899 were owned by the Standard Oil Company of New Jersey, and represented by its stock. The exchange of paper title, or the creation of one paper to represent twenty, or twenty to represent one, did not in any way increase or lessen the interest of ownership. The enhancement of value was not an increase of interest; the proportionate part owned by the trustee in the Standard Oil Company industries, whether two or many, also remained the same.
"We, therefore, hold that as to the various shares of a stock above classified and distributed in December, 1911, constituted a rearrangement of the principal and a readjustment of theindicia of ownership and not a division of accumulated profits or in any sense an extraordinary dividend."
In the case of McCoy v. McCloskey, 94 N.J. Eq. 60, the court has this to say in regard to this subject:
"But if the book value at the death of the testator was the true value of the assets at that time, the advance realized by their sale three or four years later must have been due solely to their enhancement in value [the accumulation during that time had been divided], and under the authorities, where a testator's estate consists of capital stock in incorporated companies, the income whereof is given to one and the stock to another, the appreciation in value is held to be corpus, not income." (Citing cases.)
It seems to me, therefore, that the stock of these subsidiary companies should be considered as corpus and not as income. The investment remained practically the same. The only difference being that, instead of owing one hundred shares of one company, the estate now owns an equivalent amount of shares in several companies.
The second question to be considered is with respect to the rights of the life tenants in the stock dividends which have been declared by the subsidiary corporations. This subject was considered in the case of Ballantine v. Young, *Page 148 79 N.J. Eq. 70. In this case it appears that the testator owned certain shares of stock of a trust company, which increased its capital stock and gave to the stockholders the right to subscribe at par for the new issue. At the same time the company declared a cash dividend sufficient to enable the stockholder to subscribe for the shares to which he was entitled. The trustees in this instance took this dividend and used it to pay for the new stock which they continued to hold.
In the course of the opinion the court proceeds as follows:
"The first question is, Who is entitled to the dividend of the Central Trust Company issued under the circumstances above described, the life tenants or the remaindermen?
"Ordinary cash dividends go, of course, to the life tenants. Is this an ordinary or extraordinary dividend? It seems to be extraordinary for three reasons — [1] it was declared in addition to the regular dividends; [2] it was much larger, and exceeded the net profits made in the preceding year, and [3] it was evidently made for the special purpose of enabling the stockholders to avail themselves of the new subscription. If these circumstances do not make the dividend extraordinary, for the purpose of apportionment, I do not know what could make it so. The distinction has been adverted to, apparently, with approval by the court of errors and appeals in the Lang Case,57 N.J. Eq. 326, and I do not feel at liberty to disregard it. I, therefore, think, on the doctrine of that case, that the dividend is apportionable in the ratio that the surplus at testator's death bears to the surplus accumulated thereafter up to the time the dividend was declared."
In the case of Day v. Faulks, 79 N.J. Eq. 66,
Vice-Chancellor Stevens further considered the rights of life tenants and remaindermen in the stock dividend.
In the course of the opinion (at p. 67) the court refers to the case of Ballantine v. Young, and says:
"I must start out with the assumption that stock dividends declared after the death of the testator go, in so far as they represent earnings made since his death, to the life tenants." *Page 149 
At page 68 the court proceeds as follows:
"The principle of the Lang Case is to preserve the corpus
of the estate intact, and such is the principle in analogous cases.
"In Ballantine v. Young it appeared that the stock of the Central Trust Company had been selling at a large premium. There was a large surplus. The directors declared a cash dividend of two hundred per cent., and, contemporaneously, directed a new issue of stock, which the stockholders were at liberty to take at par and pay for with that dividend. The question was, to whom the dividend and the option belonged — to the life tenants or to those in remainder? It was held that the cash dividend belonged to the life tenants [subject to the apportionment prescribed in the Lang Case], and that the option to purchase was part of thecorpus, to be disposed of as such; but that inasmuch as the trustees had devoted the cash dividend to the purchase of the stock, the life tenant was entitled to a charge upon it for his proportion of that dividend."
The decree made in Day v. Faulks was affirmed by the court of errors and appeals, and reported in 81 N.J. Eq. 173.
It would seem, therefore, that the condition of each one of the subsidiary companies must be considered as of the time the shares of stock were received by the trustee. In other words, the shares of stock in any particular company represent an interest in capital and surplus of said company at the time the same was received by the trustee. The stock dividend should be apportionable in the ratio that the surplus at the time the stock was acquired bears to the surplus accumulated thereafter up to the time the dividend was declared, and the stock dividends should be apportioned between the income and the capital of the trust, and the life tenants are entitled to have their share of the earnings charged on the stock so far as said earnings were capitalized.
The third question arises from the fact that there accrued to the trustee rights to subscribe for certain shares of stock *Page 150 
in subsidiary companies. The rule in this regard seems to be well settled.
In the case of Brown v. Brown, 72 N.J. Eq. 667 (at p.677), the court considered such a situation. In the course of the opinion it is said:
"The next head upon which instruction is sought is with respect to various instances in which the testator had stock in corporations, which corporations, after his death, increased the authorized capital stock of the company and gave to the shareholders the right to subscribe to the increased issue, which rights were sold by the executors for substantial sums of money, and the question in each case is, whether the money realized from the sale of these rights becomes principal or goes to the life tenant. Under the case of Eisner's Appeal, 175 Pa. St. 143, andMatter of Kernochan, 104 N.Y. 618, 630, it should go to principal."
In McCracken v. Gulick, supra, in the opinion of the court of errors and appeals, reference is made to the fact that the market value of stock goes to the corpus, if the trustee chooses to sell to satisfy the charge. The court says:
"This is in harmony with the rule in Ballantine v. Young,79 N.J. Eq. 70, which gave the value of an option to take new stock to the corpus of the trust fund."
In Ballantine v. Young, supra, in the course of the opinion Vice-Chancellor Stevens refers to the fact that the trustees in that case took the extraordinary dividend declared and invested it in new shares of stock of the same company, which were selling at a very large premium. He then proceeds as follows at the top of page 73:
"And so the next question is, To whom does this premium belong, to the life tenant or to the remainderman? It has been held repeatedly that the right to subscribe for new shares, which commands a premium, is a part of the principal and belongs to the latter."
I, therefore, find that these rights go to principal.
The final question arises from the fact that the trustee has received dividends upon the stock of certain of the subsidiary corporations payable in the stock of another corporation. *Page 151 
Such dividends should be treated in the same way as dividends payable in the stock of the company. Therefore, I find that the rule, as stated in the case of Ballantine v. Young, should be applied to these dividends.
There seems to be no New Jersey case bearing exactly on this point. The subject has, however, been treated in 24 A.L.R. 77, and the inference deduced from the cases there cited is as I have indicated.
This statement needs a little further amplification. If an extraordinary cash dividend is declared, then it is a very simple matter to apportion the same between the life tenant and remaindermen in accordance with the rules hereinabove laid down in the cases of Ballantine v. Young, Day v. Faulks andMcCracken v. Gulick. However, in those cases, in so far as stock dividends were dealt with, the life tenant was only given a charge upon the stock to the extent of his interest, which has been capitalized.
When stock of another corporation is distributed as a stock dividend, the reason for the rule referred to in those cases does not exist. Consequently, it would seem that the stock of another corporation, when issued in this manner as a dividend, could be apportioned in kind, so to speak, on the basis hereinabove indicated.
If so done, the relative rights of life tenants and remaindermen will not be disturbed. It is because the relative rights are disturbed when a stock dividend is declared in stock of the same company and such stock is divided proportionately as indicated. If the life tenant in such an instance received a proportionate portion of stock actually issued, as pointed out by Vice-Chancellor Stevens, he would receive more than he would be entitled to, and would, in fact, receive an interest in the remainder or corpus to which he is not entitled.
I will advise a decree according to these conclusions. *Page 152