OLD COLONY TRUST COMPANY, trustee, *vs.* MARY
FLORENCE AYMAR & others.

Suffolk.   March 8, 1944. — September 14, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Trust,* Capital and income.   *Corporation,* Dividend, Capital.

Corporate stock of a corporation which was among the assets of a second
  corporation as a part of its "capital surplus" became a dividend of in-
  come when, upon its distribution pursuant to an order of Federal
  authorities, neither the legal nor the contributed capital of the second
  corporation was impaired; and a trustee who received it in such distri-
  bution should treat it as income of his trust.

PETITION for instructions, filed in the Probate Court for
the county of Suffolk on January 21, 1944.

The case was heard by *Dillon*, J.

*H. L. Burnham*, stated the case.

*C. M. Rogerson*, (*J. E. Rogerson* with him,) for the respondent Aymar.

*A. B. Carey*, for the respondents trustees of Tufts College.

DOLAN, J. By this petition the trustee under the will of George Arthur Frye seeks to be instructed whether to treat a certain distribution of stock as capital or income. The petition was heard by the judge of probate upon the petition and answers, the facts alleged in the petition being admitted. After hearing for final determination, the judge reserved and reported the suit upon the pleadings for determination by this court.

The relevant facts are these: The petitioner, hereinafter called the trustee, held in that capacity ten shares of the stock of the Standard Oil Company of New Jersey, hereinafter referred to as Standard. The income from the trust involved is payable to the respondent Aymar. Upon her death the principal of the trust estate is to be paid to the respondent trustees of Tufts College. On November 1, 1943, the directors of Standard voted to declare out of its assets to stockholders of record at the close of business November 15, 1943, a distribution on or about December 15, 1943, "of certain assets of this Company, to wit, shares of the capital stock of Consolidated Natural Gas Company of a par value of $15.00 per share, said distribution to be at the rate of one share of Consolidated Natural Gas Company stock for each ten shares of stock held by each stockholder of record of this Company." All of the capital stock of the Consolidated Natural Gas Company, hereinafter referred to as Consolidated, was acquired with the approval of the Securities and Exchange Commission in exchange for the capital stock of certain natural gas companies, of the ownership of which Standard had been ordered to divest itself by the commission just referred to under the provisions of the Public Utility Act of 1935 (c. 687, 49 U. S. Sts. at Large, 803), and the distribution of the stock of Consolidated was made in obedience to the order of that commission. Under its order no fractional shares were to be issued

to stockholders but distribution was to be made at a proportionate cash value to stockholders who would otherwise be entitled to receive scrip therefor, and the directors so voted in ordering the distribution of the stock of Consolidated. The vote of the directors of Standard contained the following further resolution: "That the amount at which all the shares of Consolidated Natural Gas Company are carried in the accounts of this Company, namely $48,032,734.42, which is the aggregate of the amounts at which were previously carried the gas company stocks described in the Preamble above as exchanged for such shares of Consolidated Natural Gas Company, shall be charged to capital surplus in connection with such distribution."

Over a period of years "two surplus accounts have been carried in the balance sheets of Standard, namely, Capital Surplus and Earned Surplus. The Capital Surplus account amounted as of December 31, 1942, to $68,221,252.00, made up as follows:

| | |
|---|---:|
| a. Excess over par value in exchange of Standard's capital stock for capital stock of various companies | $34,689,910 |
| b. Net loss on sales of Treasury stock | (195,407) |
| c. Transfer from Earned Surplus in connection with stock dividends | $2,647,050 |
| d. Excess over par value of newly issued capital stock of Standard | 31,079,699 |
| Total | $68,221,252" |

"The assets of Standard on December 31, 1942, as shown by its books, exceeded its liabilities, including therein its capital and its capital surplus account, and were sufficient to show an earned surplus of $139,183,293."

The capital stocks of the natural gas companies that were exchanged for the capital stock of Consolidated had been acquired by Standard during the period from 1905 to 1943 at an aggregate cost to Standard of $48,032,734.42. That sum represents cash outlay from the general funds of Standard, except to the extent of $3,624,907, which represents an exchange of securities by Standard. The first sum

just mentioned is that at which it carried the stock of
Consolidated after its acquisition in the manner before
described.

The present case is governed by such controlling authori-
ties as *Gray* v. *Hemenway*, 212 Mass. 239, and *Old Colony
Trust Co.* v. *Jameson*, 256 Mass. 179.   Here, as in those
cases, the distribution of the stock in question was not a
distribution of property in dissolution of the corporation.
It makes no difference that the stocks of Consolidated were
accumulated in part by an exchange of securities of Stand-
ard to the extent of $3,624,907.   As in the cases just cited,
the capital stock of the distributing corporation was the
same after the distribution as it was before.   The distribu-
tion did not impair the capital of Standard in the legal
sense of the word capital.   After the distribution in ques-
tion, the legal capital of Standard was still exceeded by a
capital surplus account of over $20,000,000 and an earned
surplus of over $139,000,000.   The diminution in question
of its assets by Standard left both its legal and its con-
tributed capital unaffected.   The result would be the same
had Standard sold the stock of Consolidated and distrib-
uted the proceeds to the stockholders of Standard.   In
either case the stock or the proceeds when distributed must
be considered as a dividend in cash.   In fact the holders of
less than ten shares of Standard received cash.   There can
be no question of the right of Standard to declare out of
accretions to its corporate wealth a dividend that would
constitute income for the purposes of trust accounting,
where, as here, such dividend impaired neither the legal
nor the contributed capital of Standard.   See *Smith* v.
*Cotting*, 231 Mass. 42, 46–49; *Crocker* v. *Waltham Watch
Co.* 315 Mass. 597, and cases cited; *Commissioner of Cor-
porations & Taxation* v. *Filoon*, 310 Mass. 374, 385, 386;
*Flint* v. *Commissioner of Corporations & Taxation*, 312
Mass. 204, 206.   It is unnecessary to consider situations
not involved in the present case.   The fact that the dis-
tribution, which could have been voted properly in the
discretion of the directors of Standard, was voted by order
of Federal authorities, did not change the character of the

distribution for the purposes of trust accounting in the present case.

A final decree is to be entered instructing the petitioner that the share of stock of Consolidated is to be treated as income of the trust estate.

*So ordered.*