29 N.J. Super. 598 (1954)
103 A.2d 57
IN THE MATTER OF THE ESTATE OF WILLIAM F. CONWAY, DECEASED.
Superior Court of New Jersey, Essex County Court Probate Division.
Decided February 19, 1954.
*599 Mr. Henry L. Grosken argued for the trustees (Messrs. Grosken & Moriarty, attorneys).
Mr. William R. Vanderbilt argued for the life tenants (Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys).
Mr. Richard T. McDonough, Mr. Michael T. Colonna, Mr. Eugene Tarrant, Mr. John B. O'Neill (Messrs. Milton, *600 McNulty & Augelli, attorneys), Mr. George D. Mulligan and Mr. Thomas Moloney argued for the residuary legatees.
FOLEY, J.C.C.
This matter comes before the court on settlement of the accounts of the surviving trustee and the executors of Isabelle E. Conway, deceased, widow of William F. Conway, who during her lifetime was a co-trustee under his will. Approval of the accounts is sought and instructions of the court are requested, which require the construction of the Sixth and Eighth paragraphs of the will of William F. Conway and a determination of the intention of Isabelle E. Conway respecting the exercise of her powers thereunder.
In the Sixth paragraph the decedent divided his residuary estate in two parts: one-half of it was left outright to his widow; the other half in trust for his children, Mary I. Rogers and James Conway. Insofar as it is pertinent to this proceeding, the Sixth paragraph of the will provides that from the trust there should be paid to these persons, quarter-annually, out of the net interest and income therefrom the sum of $500 each; provided, however, that if the co-trustee in her judgment deemed it proper to increase the amount or amounts of such quarter-annual payments, the executors and trustees were directed to increase the payments in accordance with her written designation. This paragraph also provided for the termination of the trust upon the death of both children, in which event the corpus and undistributed income were to go to the widow, if living, and if not, to "such persons, corporation or corporations and in such amounts as she should designate by her last will and testament."
The will of Isabelle E. Conway established a residuary trust by which the sum of $8,000 per annum is paid to each of the children from income and corpus for life, and upon the death of the survivor the remaining corpus is to be divided among the several charitable organizations which have entered appearance herein.
*601 In the course of her trusteeship Isabelle Conway exercised her power to increase the quarter-annual payments to the children on two occasions. On April 25, 1952 she directed a letter to herself and the co-trustee, Federal Trust Company, declaring that in her judgment she deemed "it proper from now henceforth or until further or other written designations by" her, to increase the payments to each child to one-half of all the net interest and income from the trust. On July 25 of the same year she similarly directed the division between them of the accumulated and undistributed net interest and income from the trust.
Her authority to so act is unquestioned. The problems now presented are, first, whether or not sound construction of the Sixth paragraph of the William F. Conway testamentary instrument leads to the conclusion that he intended that grants to the children in excess of $500 quarter-annually made by his wife under the broad powers with which he invested her should terminate upon her death, and second, granting that his intention was otherwise, whether or not she by her written directions purposed that the payments thus increased should survive her perpetually.
The entire structure of William F. Conway's will breathes a confidence in his wife to carry on the providing for his family in his absence. It is significant, indeed, that while he nominated a corporate fiduciary as co-trustee, he carefully refrained from granting to it the power to determine the necessity for, or the propriety of, increasing the relatively modest grants of income to the children. Seemingly, he felt it best to leave that to the respected judgment of his wife, certain that in her day she would appraise and evaluate their needs, and their ability to put the fruits of his efforts to good purpose after both of them had passed along. One cannot but feel that the absolute discretion which husband thus granted to wife was the result of a thorough understanding between them, and this is reflected in the scope of the power of appointment in his will and the manner of the exercise of it in hers. His mention of "corporation or corporations" and the identity of her residuary *602 legatees plainly imply that she did what he wanted her to do, and did so because she knew what he wanted. It is my opinion, therefore, that the Sixth paragraph of the William F. Conway will can be construed only as granting to his wife the absolute right to fix permanently increases in the income of the cestuis if she chose so to do.
The question of her intention then arises. Were the increases which she directed to be tentative or temporary in character, or did she have in mind that they should continue to be paid by the surviving trustee after her death? The latter appears to be the sounder conclusion. The very fact that she changed the payments from a stated sum to a division of the entire income and, shortly thereafter, directed the division of the accumulated income and interest is a strong indication that she deemed it proper that the future pattern of distribution of the income and interest of the trust estate should be one whereby the children would be the full and exclusive beneficiaries of the accretions to it during their lives. The point of this conclusion is sharpened by the words of her directive, "from now henceforth or until further written designation." "Henceforth" means "from now on" and is a pronouncement which rings with finality. I have no doubt that Mrs. Conway intended that the letter of April 25, 1952 should govern the interest of her children in the trust for their lifetime, and that the qualification that the grant should be subject to further written designation reflected no apprehension of the occasion for its modification.
It is, therefore, my instruction to the surviving trustee that it distribute the income and interest derived from the trust in accordance with the letter of Isabelle E. Conway, of April 25, 1952, and that it continue to do so for the duration of the trust.
Instructions are also requested concerning the allocation of certain bonds purchased pursuant to "rights," stock dividends and three liquidating dividends. The Eighth paragraph of the William F. Conway will provides:
*603 "I further direct that all dividends of money which may be received by my executor and trustees, whether ordinary or extraordinary, shall be considered as income and treated as such as herein provided; and all dividends of stock or other things of value, including all proceeds from the sale of `rights' shall be treated as income, notwithstanding any legal rule to the contrary."
I do not conceive that proceeds of the sale of the rights and securities obtained by the exercise of such rights can by any reasoning be considered identical. The former were in the nature of a dividend, while the latter required an investment of capital which reduced pro tanto the corpus of the estate. I therefore direct that the bonds of the American Telephone and Telegraph Company be treated as corpus.
The stock dividends received from the Fidelity Union Trust Company and the National Newark & Essex Banking Company will be treated as income in accordance with the express direction of the testator.
A "liquidating dividend" is a return of capital. It is a "dividend" only in the entirely literal sense that it is the result of the proportionate division of an aggregate of investments.
Common understanding of the meaning of the word "dividend" is otherwise. To an investor a dividend represents his share of the earnings of the enterprise to which he has contributed. It is the product of the corpus as distinguished from the corpus itself.
Applying these principles to the present case, the question arises as to whether or not the liquidating dividends of the Associated Company and the Guaranty Company of New Jersey should be considered as extraordinary dividends which by the will of the testator must pass to the life beneficiaries. It is my view that while a liquidating dividend may be determined to fall into the category of an extraordinary dividend, (See 5 Clapp on Wills, p. 579), the primary inquiry is whether or not the testator intended that it should be thus catalogued. I find nothing in either the William F. Conway will or the Isabelle E. Conway will which suggests *604 this. Cf. Jackson v. Jackson, 22 N.J. Super. 269 (Ch. Div. 1952); National Newark etc. Banking Co. v. Work, 109 N.J. Eq 468 (Ch. 1932). Consequently, I direct that the liquidating dividends herein mentioned be treated as corpus.
A judgment may be submitted in accordance herewith.