92 N.J. Super. 428 (1966)
224 A.2d 7
IN THE MATTER OF THE ESTATE OF WILLIAM F. CONWAY, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1966.
Decided October 28, 1966.
*431 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Rodman C. Herman argued the cause for defendant-appellant, Saint James Hospital of Newark (Messrs. Whiting, Moore, Hunoval & Herman, attorneys).
Mr. Gerald W. Conway argued the cause for cross-appellants Mary I. Rogers and James A. Conway (Messrs. Schreiber, Lancaster & Demos, attorneys).
Mr. Edward J. Toner argued the cause for plaintiff-respondent First National State Bank of New Jersey (Messrs. Collins & Toner, attorneys; Mr. Charles Rusen, Jr., on the brief).
The opinion of the court was delivered by CARTON, J.A.D.
The appeal and cross-appeals are from final judgments of the Essex County Court, Probate Division, instructing plaintiff First National State Bank of New Jersey (trustee), as the surviving trustee of a trust established under the will of decedent, William F. Conway, with respect to the allocation as between principal and income of certain shares of corporate stocks received by the trustee as a stockholder in each of two corporations.
Decedent executed his will on June 30, 1950. He died later the same year, and his will was admitted to probate on November 10, 1950. In paragraph Sixth of his will, he directed that one-half of the residue of his estate be placed in trust, and that the sum of $500 be paid quarter-annually, *432 "out of the net interest and income therefrom," to each of his two children.
In paragraph Eighth of his will, decedent provided:
"Eighth: I further direct that all dividends of money which may be received by my executor and trustees, whether ordinary or extraordinary, shall be considered as income and treated as such as herein provided; and all dividends of stock or other things of value, including all proceeds from the sale of `rights' shall be treated as income, notwithstanding any legal rule to the contrary."
He further provided that his widow should have complete authority to increase the payments to whatever amount she deemed proper. The power was exercised by the widow on April 25, 1952, at which time she increased the childrens' allowance to "one-half to each of them of all the net interest and income from said trust."
Decedent further declared that the principal of the trust, upon the death of the last surviving child, should go to his widow, if she were alive, and if not, to whomever she appointed in her own will. The widow died in 1953. In her will she exercised this power by directing that upon the death of the last surviving child, the principal should be shared by seven institutional charities. The value of the principal was $245,238 in October 1953, the time of the first accounting, and had increased to $416,280 as of December 31, 1963, which was the close of the accounting period in the present proceedings.
Among the trust assets were a number of shares of common stock in E.I. DuPont de Nemours & Company. About 40 years ago, DuPont had purchased shares of stock in General Motors Corporation as an investment at a cost of about $132,000,000. Over the years this stock had undergone a tremendous increase in value, so that in 1962 DuPont carried the stock on its own books at a value of about $1,250,000,000. In that year, however, continued ownership by DuPont was held to be in violation of the federal anti-trust laws. Consequently, DuPont was ordered by the United *433 States District Court for the Northern District of Illinois to divest itself of the stock "by such means as it [DuPont] may select." United States v. E.I. DuPont de Nemours & Co., 126 F. Supp. 235 (N.D. Ill. 1954) Pursuant to resolutions of its board of directors, DuPont decided to divest by distributing the stock in kind to its own shareholders in accordance with their respective holdings of DuPont stock.
Also among the assets of the trust were 170 shares of capital stock in The Chase Manhattan Bank. On January 29, 1964 the board of directors of the bank by resolution declared "a 50% dividend on its capital stock," payable March 6, 1964. The shares of stock which the bank used for payment of the dividend were new shares authorized by its stockholders on January 28, 1964, and the full amount of the aggregate par value of these new shares ($12.50 each, the same as the existing shares) was transferred from the bank's accumulated and undivided profits to its capital account. The bank's total capital was thereby increased from $174,594,425 to $261,891,638, and its earned surplus, which would have been available for payment of cash dividends to the stockholders, was substantially reduced. As a result of this dividend, the trust received 85 additional shares of Chase Manhattan stock.
The trustee now seeks instructions whether the 136 shares of General Motors stock and the 85 shares of Chase Manhattan stock should, under the terms of the decedent's will, be allocated as income to testator's children or retained as part of the principal of the trust.
The trial court concluded that the DuPont distribution of General Motors stock "was not a dividend of stock" within the meaning of paragraph Eighth of decedent's will, and therefore was allocable to trust principal. He concluded that the distribution of Chase Manhattan stock was such a dividend of stock and must be treated as trust income.
St. James Hospital of Newark (St. James), one of the remaindermen of the trust, appeals from that part of the judgment directing the allocation of the Chase Manhattan *434 stock to income, and Mary I. Rogers and James A. Conway, decedent's children, and life beneficiaries of the trust, appeal from those parts of the judgments directing the allocation of the DuPont stock to principal.
In construing a will the court is required to give legal effect to the testator's intent as expressed by the language used, and the circumstances from its execution until the testator's death. In re Cook's Estate, 44 N.J. 1 (1965). The court must place itself in the position of the testator and endeavor to accomplish what he would have done had he envisioned the present inquiry. Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 573 (1962).
In general, whenever a testator creates a trust with life estate and remainder, it may be assumed that he intended the corpus to be preserved for as long as necessary to benefit the income beneficiaries during their life span. Where the testator has clearly expressed his intention as to whether dividends or other corporate distributions should be recognized as income or principal for purposes of allocation in a trust estate, such provision will be given controlling effect. In re Fera's Estate, 26 N.J. 131, 143 (1958); In re Armour, 11 N.J. 257, 279 (1953). The critical issue here is whether decedent, in the language used in his will, manifested an intention as to the treatment to be accorded to the DuPont and Chase Manhattan distributions. If no such intent can be ascertained governing the allocation of principal and income, the Principal and Income Act applies. N.J.S. 3A:14A-1 to 9 (1952), as amended, N.J.S. 3A:14A-4 to 9 (Supp. 1965)
The record is bare as to the circumstances surrounding the execution of the will in 1959, except for the statement appearing in the trustee's brief that the widow's will was made at the same time and that it contains an apportionment clause identical to that appearing in paragraph Eighth of testator's will. At that time New Jersey had not yet enacted the Principal and Income Act. Under then existing law, where not provided otherwise by will, stock dividends, *435 dividends payable in the stock of another corporation, and extraordinary cash dividends were apportioned between income and corpus under what is known as the Pennsylvania rule. Koehler v. Koehler, 99 N.J. Eq. 141 (Ch. 1926).
Decedent was a resident of Essex County, New Jersey, when he executed the will. He designated a Newark trust company as alternate executor and trustee. The language of paragraph Eighth (as well as the remainder of the will) clearly bears the imprint of having been drafted by an attorney. Since the verbiage used in this clause employs legal terms of art, it is a reasonable inference that the scrivener was a lawyer or one familiar with legal terminology and with the purpose of this clause. See In re Pleasonton's Estate, 45 N.J. Super. 154, 160 (App. Div. 1957).
On this hypothesis, and bearing in mind the very fact that testator saw fit to give specific direction with respect to allocation, it seems reasonably inferable from the language used in paragraph Eighth that this paragraph was designed to avoid the apportionments between income and corpus required under the Pennsylvania rule. The use of the phrase "notwithstanding any legal rule to the contrary" appears to be a direction in general terms that this rule of construction, otherwise applicable, was not to be applied in the allocation as between principal and income.

THE DuPONT DISTRIBUTION OF GENERAL MOTORS STOCK
We come now to the inquiry whether the testator has manifested an intention that the DuPont distribution of stock of the General Motors Corporation was to be treated as income. The income beneficiaries contend that testator's direction that "all dividends of stock or other things of value shall be treated as income" is a clear mandate on this question.
Because of its unusual nature, the DuPont distribution does not fall readily into the familiar categories by which trust receipts are commonly allocated to principal or income, either under well established trust terminology and rules of construction or under most statutory provisions.
*436 The manner in which the DuPont company treated its holdings of the General Motors stock sheds considerable light on its character. Each of the three DuPont resolutions authorizing the distribution of General Motors stock stated that the stock had been treated as an investment and as part of DuPont's income-producing assets, and that the portion of the carrying value representing the cost of the General Motors stock being distributed would be charged against paid-in surplus and the balance against revaluation surplus.
The circumstances surrounding DuPont's acquisition and retention of this large block of General Motors stock as an investment; its treatment of such stock as a part of its income-producing assets, the net dividends from which it consistently passed on to its stockholders; its accounting practices in adjusting the carrying value of such stock by additions to a revaluation surplus account; the court-ordered divestiture of these shares and the enactment of special federal income tax legislation applicable thereto, all indicate the unusual nature of this stock distribution.
Despite its unusual character, the income beneficiaries contend that the DuPont distribution must necessarily be allocated to income. This contention is premised on the primary assumption that the term "dividends" has the same meaning as "distributions." But nowhere in his will does decedent define the term "dividends," and nowhere does he use the broader term "distributions."
That there is a difference between a distribution pursuant to a divestiture decree and a dividend of stock of another corporation has long been recognized. The act of divestiture is dictated by court order, while the declaration of a dividend must be the voluntary act of the corporation. In re Arens' Trust, 41 N.J. 364, 375 (1964); Koehler v. Koehler, supra. See Agnew v. American Ice Co., 2 N.J. 291, 298 (1949):
A dividend has been described as follows:
*437 "A payment to the stockholders of a corporation as a return upon their investment is, in general, termed a `dividend'. While the word `dividend' may be broadly defined as a sum of money or portion of a divisible thing to be distributed according to some fixed scheme, and therefore is susceptible of use in several senses with respect to corporations, as generally understood and used it refers to the recurrent return upon stock paid to stockholders of a going corporation in the ordinary course of business which does not reduce their stock holdings and leaves them in a position to enjoy future returns upon the same stock * * *." 19 Am.Jur.2d, Corporations, § 804 (1965)
Because the distributions of General Motors stock by DuPont were required by a final judgment of a federal court, the voluntary and uncontrolled exercise of discretion which usually precedes the declaration of a dividend was absent. The income beneficiaries point out that under the court order DuPont could have selected another method of divestiture, such as a sale. They argue that therefore the directors retained and exercised discretion. However, it is evident from the recitals in the resolution that the tax treatment to be accorded these distributions was a major factor in determining the method used. This conclusion is borne out by reference to a letter from DuPont's president to the stockholders on the first distribution, in which he refers to the fact that the corporation regarded the distribution as a return of capital and sets forth at length the tax advantages to the stockholder as a result of this method of distribution. The presence of such considerations certainly suggests that, although the corporation theoretically may have had other permissible courses of action available, the mandate of the divestiture decree left it no other practical alternative.
In determining whether the distributions fall within the category of "dividend," as that term is generally understood, some effect must be attributed to language used by DuPont in making them. Each of the resolutions adopted by the DuPont board of directors is entitled as a "Divestiture of General Motors Stock," and the action of the board in making such divestiture is invariably described in the resolutions *438 as a "distribution." The opening paragraph of each of the resolutions refers to DuPont's holdings of 63,000,000 shares as resulting substantially from dividends, and the exercise of rights on the shares acquired 40 years earlier. Yet nowhere is there reference to the distributions as dividends.
Under all the circumstances, we are not persuaded that testator manifested an intent to include such extraordinary distributions as those made by the DuPont company under the compulsion of court order within the term "dividends," as he used that word in the will. He did not use the word "distributions" in his will. We cannot assume that he was unaware that a distinction existed between "dividends" and "distributions." Indeed, it seems extremely doubtful that he ever envisioned the possibility that the trustee might receive such a unique distribution. See In re Arens' Trust, supra, 41 N.J., at p. 370. Had he considered such a possibility, it seems likely that he would have made a specific direction in his will as to how such a distribution would be treated.
It may further be noted that in the first clause of his direction in paragraph Eighth, decedent provides that all "dividends of money * * *, whether ordinary or extraordinary, shall be considered as income," while in the second clause he only refers to "dividends of stock" without any reference to "ordinary or extraordinary." The difference between these two clauses suggests that decedent only intended to include as income those dividends of stock which were "ordinary." But cf. Jackson v. Jackson, 22 N.J. Super. 269 (Ch. Div. 1952). Even if the distribution of General Motors stock by DuPont is regarded as a "dividend," it certainly cannot be considered "ordinary."
Nor do we believe it can fairly be said that by the use of the words "or other things of value" immediately following the words "dividends," testator meant to broaden the scope of that word to include a distribution of the unusual character here involved. Arguably, such effect could be attributed to this phrase. However, we take the view that *439 it should be construed as limiting or modifying the word "dividends," particularly in view of the subsequent reference to the proceeds from the sale of rights. Under familiar rules of construction, "other" is to be read as "other such like." "The general terms are limited by the particular; the generic sense by the restrictive words in association." In re Armour, 11 N.J. 257, 272 (1953). Thus, these general words should be construed to embrace objects similar in nature to those enumerated by antecedent and subsequent words. We have already pointed out the dissimilarity of the objects in this case. We conclude, therefore, that testator has not clearly manifested in paragraph Eighth of his will his intention as to the allocation of the DuPont distribution, and that consequently the provisions of the Principal and Income Act become applicable.
The pertinent portions of the sections provide:
"3A:14A-4. Ascertainment of principal
A. Except as in this act otherwise provided, the following shall be principal:

* * * * * * * *
(d) all distributions of corporate assets to stockholders on the liquidation of a corporation whose stock is held in an estate.
(e) all distributions, whenever made, of corporate assets to stockholders of a corporation whose stock is held in an estate, which are designated by such corporation as a return or distribution of capital or a division of corporate property.

* * * * * * * *"
"3A:14A-5. Ascertainment of income
A. Except as in this act otherwise provided, the following shall be income:
(a) all dividends and corporate distributions payable to an estate not constituted principal under the provisions of section 4 of this act, including, by way of description, but not by way of limitation, cash dividends, extraordinary and ordinary, distribution in the shares of the distributing corporation which under section 4 of this act shall be income and distributions in securities of a corporation other than the distributing corporation;

* * * * * * * *"
*440 The court below allocated the distribution to principal under N.J.S. 3A:14A-4, subd. A. (e), by finding that the divestiture had been treated as a return or distribution of capital. We concur with this determination and the conclusion implicit in it that such treatment constituted an adequate compliance with the statutory requirement that the distribution be so "designated by such corporation."
Evidence of the nature of this asset as a return or distribution of capital appears from a number of facts. DuPont carried the stock for years as an income-producing asset, and the stockholders of DuPont received the dividends of this investment "net of taxes." The corporation charged the cost of the General Motors stock against paid-in surplus and the balance of the carrying value against revaluation surplus. Moreover, inspection of the resolutions of the board of directors adopted pursuant to the order of the federal court reveals that DuPont itself intended by the distribution to make a return of capital. They make specific reference to the fact that Congress had enacted an amendment to the Internal Revenue Code of 1954 so as to provide that a distribution of stock pursuant to an order enforcing the anti-trust laws would not be treated as a dividend, but would be treated as a return of capital.
The inescapable conclusion is that DuPont in fact made a return or distribution of capital, and that the board of directors so considered it and characterized it.
The income beneficiaries insist that this provision of the statute must be construed and applied literally. The trustee, they say, should be required to look only at the form of the distribution, and if the form is one which would otherwise be considered income under the law, and no language in so many words specifying it as a designated return of capital appears, the distribution shall be allocable to income. Otherwise they contend the statutory purpose of providing the trustee with safe and clear-cut standards in allocating receipts on corporate stock would be thwarted. We do not agree. In looking to the form of the resolution, *441 the trustee must still determine whether the language fulfills the statutory meaning of designation. See In re Arens' Trust, 41 N.J. 364, 388 (1964).
The purpose of the Principal and Income Act is to provide as simple and convenient administration of the estate as is consistent with fairness to all beneficiaries. The form of distribution is therefore an important consideration, but the statute is not self-executing. The statute itself includes some additional criteria, e.g., the number of shares of stock distributed as a percentage of stock held (N.J.S. 3A:14A-4, subd. A (a)), the commencement of formal liquidation (N.J.S. 3A:14A-4, subd. A (d)), and the presence or absence of a designation by the distributing corporation (N.J.S. 3A:14A-4, subd. A (e)). These safeguards insure that convenience will not supplant the equally important purpose of achieving a fair and equitable result.
The statute does not specify in what manner or form the designation must be made. True, the presence of a statement in the corporate resolution that a proposed distribution is designated as a return or distribution of capital is helpful and may be controlling in determining its nature. But it does not follow that literal compliance is required to fulfill the statutory purpose. Where, as here, a corporation makes a distribution having the essential elements of a return of capital, denominated and intended as such by corporate resolution, we feel that the statutory requirements and purposes are fully satisfied. Further, we believe that such a construction is in accord with its basic purpose of providing for an equitable allocation of distributions between principal and income beneficiaries.
We do not consider that this construction of the statute diminishes the protection designed to be afforded the trustee. In those unusual cases where there is doubt as to whether a particular distribution complies with the statute, the trustee may apply to the court for instructions.
In re Arens' Trust, supra, is readily distinguishable from the present case. As Justice Hall points out in that case, the *442 Indiana Standard Oil Company, in making several small distributions of New Jersey Standard Oil Company stock, designated the distributions as dividends in kind payable in securities of another corporation and charged the value thereof against earned surplus, rather than denominating them as return or distribution of capital or a division of corporate property. Here, DuPont charged the cost of the General Motors stock against paid-in surplus and the balance of the carrying value against revaluation surplus, and designated the distribution as a return of capital.
Old Colony Trust Co. v. Aymar, 317 Mass. 66, 56 N.E.2d 889 (Sup. Jud. Ct. 1944), which is referred to in the briefs of all parties and discussed by the trial court, is not controlling in the present case. In Aymar the divestiture was forced by a Securities Exchange Commission order under the Public Utility Act of 1935, c. 687, 49 U.S. Stat. 803, 15 U.S.C.A. § 79 (1935), and the resolutions of distribution contain no mention of dividends. In these respects the distribution in Aymar is somewhat analogous to the DuPont distribution. The Massachusetts court in Aymar held that the distribution must be considered income, through inquiry into the substantive nature of the distribution as indicated by the case law of that state. However, the court here is bound to make allocation in accordance with the language of the Principal and Income Act, rather than through an inquiry into the substantive nature of the distribution under the case law.
Nor is the fundamental nature of the DuPont distribution as a designated return of capital under the New Jersey Principal and Income Act affected by the lack of stockholder consent. See Del. Gen. Corp. Law, § 244. Formal statutory provisions designed to protect creditors and shareholders from dissipation of capital would seem to have no application to a distribution under compulsion of the federal court.
The remaindermen also urge the DuPont distribution is in the nature of a liquidating dividend, and therefore must be allocated to principal under N.J.S. 3A:14A-4, subd. A *443 (d). In In re Conway's Estate, 29 N.J. Super. 598 (Cty. Ct. 1954), which involves a prior action relating to this estate, the court held that liquidating dividends were not encompassed by the language of paragraph Eighth. If the DuPont distributions constitute liquidating dividends, this decision may require that these distributions be treated as principal for that reason also. The scant authorities on the specific question are in conflict. See Barclay, "Allocation of General Motors Stock," 101 Trusts and Estates 140 (1962), and 3 Scott, Trusts, § 236.5 (1966 Supp.), where the distributions are termed a liquidation. Contra, DuPont v. DuPont, 208 A.2d 509 (Del. Sup. Ct. 1965). We deem it unnecessary to decide this question in view of our determination that for other reasons the DuPont distributions should be treated as principal.

THE CHASE MANHATTAN STOCK DIVIDEND
It is unquestioned that the testator could effectively provide that what would otherwise be principal should be treated as income. In re Fera's Estate, supra. The question here is whether the testator manifested such an intent with respect to the 50% stock dividend of the Chase Manhattan Bank.
In paragraph Eighth he directed that "all dividends of stock * * * shall be treated as income * * * notwithstanding any rule to the contrary." The point was urged in the trial court, and renewed on appeal, that among many lawyers there is a recognized distinction between "dividends of stock" and "stock dividends." According to this view, a "dividend of stock" is a distribution of earnings effected by a corporation distributing stock of another corporation on a ratable basis to its stockholders. The distinction is made that a "stock dividend" neither affects the assets of the corporation nor its total net worth, while a "dividend of stock" (which is one form of an asset dividend) has the effect of decreasing the company assets and net worth by the amount of the distribution.
*444 The trustee takes the position that testator's use of the phrase "other things of value" in conjunction with the words "dividends of stock" suggests an intention to refer to asset dividends rather than stock dividends. In support of this view, the trustee also points out that the Principal and Income Act (N.J.S. 3A:14A-5, subd. A (a)) and the Internal Revenue Code (Int. Rev. Code 1954, § 305) recognize a difference between these terms.
We agree with the conclusion of the trial court in rejecting this literal distinction between "stock dividends" and "dividends of stock." We are of the view that testator meant to draw no such fine distinction between "stock dividends" and "dividends of stock," and that he intended to include both in the use of the words "dividends of stock." This interpretation, we believe, is more in accord with the commonly accepted use of these words and with his probable intent. The suggested distinction may have value to accountants and others especially concerned with corporate finance, but we can see no basis for holding that testator intended to use these words in such a highly technical sense. Had testator used the term "stock dividends" as well as "dividends of stock," the suggestion that he might have been aware of such a distinction and intended to apply it might rest on firmer grounds.
Moreover, this interpretation is in complete accord with the view expressed in In re Conway's Estate, 29 N.J. Super. 598, 603 (Cty. Ct. 1954), where in construing this same paragraph Eighth, Judge Foley held that stock dividends received from several banks were to be "treated as income in accordance with the express direction of the testator."
Although it could be argued that the stock distribution here is much larger than those in the earlier adjudication, nevertheless, as pointed out in Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962):
"* * * the goal always is the ascertainment of the testator's intent and it is not to be thwarted by unduly stressing `the literal meaning' of his words * * *; the object is to ascertain `the probable intent' of the testator by a `preponderance of the evidence' and to carry it out *445 in accordance with his wishes `even though they be imperfectly expressed'." (at p. 565)
Accepting this interpretation of paragraph Eighth as encompassing "stock dividends" within the broad language employed, it becomes necessary to examine the nature of the Chase Manhattan distribution to ascertain whether it was actually a stock dividend. In the notice to its stockholders of a special meeting to authorize an increase in the amount and number of shares of its capital stock, Chase Manhattan Bank stated that the new shares were to be used for the purpose of making a "stock dividend." In the corporate resolution effecting the distribution the bank twice referred to the distribution as a "50% dividend on its capital stock." Similarly, twice in its annual report and again in the reconciliation statement for 1964 the bank made further reference to the distribution as a "stock dividend." Furthermore, in reflecting the stock dividends in its capital account, the bank transferred an amount equal to the par value of the shares distributed from the "Undivided Profits Account" to the "Capital Stock Account."
St. James maintains, however, that the characterization of the distribution as a "stock dividend" by Chase Manhattan does not control the legal significance of the corporate action. In essence, it asserts there was no capitalization of earnings, but only more shares were issued to the present stockholders and their par or stated value reduced. It claims that there was no transfer from current earnings or earned surplus to any capital account, and that the transfer was solely from one capital account to another  from undivided profits to capital stock. This argument is unsound. We see no real distinction between "undivided profits" and "earned surplus." See Kohler, A Dictionary for Accountants, p. 506 (1963). It is clear that the Chase Manhattan transferred $87,297,212.50 of its undivided profits to its permanent capital account, this being an amount equal to the par value of the shares distributed. Thus, St. James' assertion that the par *446 or stated value of the bank's shares was reduced, does not appear to be borne out by anything in the record.
Nor is there any substance to the argument that the nature of the dividend somehow changed into a stock split because the board of directors solicited stockholder approval. There was, in fact, a change in the corporate accounts, but the distribution still retained the essential characteristics of a stock dividend. See In re Arens' Trust, supra, 41 N.J., at p. 375.
Affirmed.
KOLOVSKY, J.A.D. (dissenting in part)
I do not agree that the DuPont distribution of the General Motors Corporation stock is to be allocated to principal. In my opinion, paragraph Eighth of the testator's will requires that the distribution be treated as income. Further, in my view, even if paragraph Eighth were not in the will, the same result would follow under the Principal and Income Act, N.J.S. 3A:14A-1 et seq., applicable to pre-1952 trusts by the change in the common law rule accomplished by In re Arens' Trust, 41 N.J. 364 (1964), and the 1964 amendment to N.J.S. 3A:14A-9.
It is evident that by paragraph Eighth of his will testator sought to avoid the problems and complications inherent in the application of the Pennsylvania rule. The language used to provide for treatment of corporate distributions as income, "notwithstanding any legal rule to the contrary," is broad and comprehensive. Even proceeds from the sale of "rights," traditionally and even now under the Principal and Income Act (N.J.S. 3A:14A-4) considered principal, are directed to be treated as income. I cannot subscribe to the narrow construction of paragraph Eighth and of the word "dividend" adopted by the trial court and by the majority opinion. Cf. Jackson v. Jackson, 22 N.J. Super. 269 (Ch. Div. 1952).
The distribution here made is a dividend; indeed, since it was paid in the stock of another corporation it "is deemed a cash dividend," not a stock dividend. Graves v. Graves, 106 *447 N.J. Eq. 85, 87 (Ch. 1930), affirmed o.b. 107 N.J. Eq. 595 (E. & A. 1931); Annotation, "Life Tenant and Remaindermen  Dividends," 130 A.L.R. 492, 568 (1941), suppl. 44 A.L.R.2d 1300 (1955). Nor should it matter that the distribution which could have been voted properly in the discretion of the directors of DuPont was voted by order of the federal court. Old Colony Trust Co. v. Aymar, 317 Mass. 66, 56 N.E.2d 889, 891 (Sup. Jud. Ct. 1944).
Moreover, even if the will provisions were not controlling, I would rule that the distributions are income under the Principal and Income Act since they are "distributions in securities of a corporation other than the distributing corporation." N.J.S. 3A:14A-5, subd. (A)(a); In re Arens' Trust, 41 N.J. 364, 388 (1964).
I do not agree that the record supports a finding that the distributions were designated by DuPont "as a return or distribution of capital or a division of corporate property." N.J.S. 3A:14A-4, subd. (A) (e). The resolutions directing the distributions do not so provide, nor was any corporate action taken by either the directors or stockholders of DuPont to effectuate such a result under the applicable Delaware General Corporation Law. The fact that by reason of an amendment to the Internal Revenue Code the distributions which would otherwise be taxed as ordinary income were granted more favorable capital gains treatment is of no significance.
Finally, it is of interest to note that in a recent panel discussion concerning the Uniform Principal and Income Act, after which the New Jersey act is patterned, In re Arens' Trust, supra, 41 N.J., at p. 382, Professor Austin W. Scott and G. Van Velsor Wolf, one of the Commissioners on Uniform State Laws who drafted revisions of the Uniform Act, were of the opinion that under the original Uniform Act and the Maryland version thereof, the DuPont distribution of the General Motors stock would be income. Dunham, Scott & Wolf, "Uniform Revised Principal and Income Act," 101 Trusts and Estates 894 (1962).
*448 Section 6 of the Uniform Act was revised in 1962 to provide that a court-ordered distribution such as here involved is principal. 9B Uniform Laws Annotated. Other states have adopted similar amendments or an amendment granting trustees discretion in allocation in such a situation. But New Jersey has not adopted such an amendment, even though it did amend three sections of the Principal and Income Act in 1964. L. 1964, c. 123.
I would reverse so much of the judgment as directs that the General Motors stock received by the trustee from DuPont be treated and retained as part of the corpus of the trust.