IN THE MATTER OF THE ESTATE OF
WILLIAM F. CONWAY, DECEASED.

Argued January 26 and February 8, 1971—Decided July 27, 1971.

*Mr. John J. Rush* argued the cause for defendant-appellant James A. Conway (*Messrs. Farley & Rush,* attorneys; *Mr. John J. Rush* on the brief).

*Mr. Rodman C. Herman* argued the cause for defendants-respondents, cross-appellants, Saint James Hospital of Newark and Saint Joseph's Home for the Blind — Sisters of Saint Joseph of Newark, and defendant, Saint Vincent's Hospital (Montclair) (*Messrs. Whiting, Moore, Hunoval & Herman,* attorneys; *Mr. Rodman C. Herman* on the brief).

*Mr. Frank J. Vecchione* argued the cause for defendant-cross-appellant Home for the Aged of the Little Sisters of the Poor (*Messrs. Crummy & O'Neill,* attorneys; *Mr. Frank J. Vecchione* on the brief).

The opinion of the Court was delivered by

PROCTOR, J. The First National State Bank of New Jersey, as trustee for the estates of William F. Conway and his wife Isabelle E. Conway, instituted actions in the Essex County Court seeking approval of its accountings and requesting instructions regarding the disposition of stocks held in the William F. Conway estate. Several instructions by the trial court are challenged on this appeal and the cross-appeals. James Conway, income beneficiary and testator's son, appeals from that part of the trial court's judgment which allocates six of eight stock distributions to corpus and from that part which allocates to corpus the share of trust income designated to Mary Rogers, testator's daughter, which has accrued since her death. Three of the remaindermen under the trust,[1] St. James Hospital of Newark, St. Joseph's Home for the Blind — Sisters of St. Joseph of Newark, and the Home for the Aged of the Little Sisters of the Poor, cross-appeal from that part of the trial court's judgment which allocated two of the eight stock distributions to income. Prior to argument in the Appellate Division we granted the motions of all parties for certification. *R.* 2:12–2(a); *R.* 2:2–1(b).

The testator, William F. Conway, died on October 2, 1950, and his will was admitted to probate on November 10 of that year. After making several specific bequests, the will left one-half of testator's estate to his wife, Isabelle. Under paragraph Sixth of testator's will the residuary was placed in a trust with Isabelle and the Federal Trust

---

[1]There are seven remaindermen under the trust; all are charitable institutions. In addition to three cross-appellants they are: St. Mary's Orphanage, St. Mary's Hospital (Orange), St. Vincent's Hospital (Montclair) and St. Michael's Hospital (Newark).

Company (predecessor to the present corporate trustee) as trustees. The sum of $500.00 was to be paid quarter-annually out of the "net interest and income" of the trust to each of his two children, Mary Rogers and James Conway. Isabelle was empowered in her discretion "to increase the amount or amounts of such quarter-annual payments to either or both of my said children at any time or times." The trust was to terminate "[u]pon the death of both of my said children" and the corpus of the trust would then pass to Isabelle, together with undistributed net interest and income if she were living. In the event testator's wife predeceased the children, "the corpus of said trust, together with all undistributed net interest and income therefrom shall go * * * to such person or persons, corporation or corporations, and in such amounts as my wife shall, by her last will and testament, designate."

In paragraph Eighth of his will, decedent provided:

EIGHTH: I further direct that all dividends of money which may be received by my executor and trustees, whether ordinary or extraordinary, shall be considered as income and treated as such as herein provided; and all dividends of stock or other things of value, including all proceeds from the sale of "rights" shall be treated as income, notwithstanding any legal rule to the contrary.

After testator died, his wife exercised her power to increase payments out of the trust to her children by directing the corporate trustee to pay out one-half to each of them of all the net interest and income from said trust. Later she made this order retroactive to include all interest and income undistributed since her husband's death.

On August 1, 1953, Isabelle Conway died; her will was admitted to probate two weeks later. In her will she exercised her power of appointment over her husband's trust by naming the seven charities previously mentioned as remaindermen equally entitled to share in the corpus upon termination of the William F. Conway trust. As to her own estate, she made several specific bequests, including gifts

of $25,000 each to her children, and left the residue in trust, directing the trustees to pay $8,000 annually from the trust income and corpus, if necessary, to each of the two children. The trust was to terminate at the death of the last surviving child and the corpus was to be divided among the same seven charities which she designated as remaindermen to her husband's trust except that $25,000 was to be divided among the children of her daughter, if any, and the same amount to be divided among the children of her son, if any.

The first question before us is whether eight distributions of stock to the William F. Conway trust are allocable to income or corpus. William Conway's will directed only that "dividends of stock or other things of value * * * shall be treated as income, notwithstanding any legal rule to the contrary." No mention was made of stock splits. Six of the eight distributions in question were true stock splits, and the trial court held that they were allocable to corpus. The court reasoned that, in the absence of any evidence of a contrary intent by the testator, the allocation is governed by the provisions of the Principal and Income Act, *N. J. S. A.* 3A:14A–1 *et seq.* We agree with this reasoning and affirm the allocation to principal of the stock distributions by American Home Products, American Telephone & Telegraph Co., Public Service Electric & Gas Co., Consolidated Edison Co. of New York, International Telephone & Telegraph Co., and Square D Co. See *In re Arens,* 41 *N. J.* 364, 375 (1964).

The trial court further held that the remaining two stock distributions by Chase Manhattan Bank and Consolidated Foods Corporation constituted stock dividends within paragraph Eighth of the will and should be allocated to income. We also agree with this determination. These stock distributions are similar to those which we held should be allocated to income in *In re Conway,* 50 *N. J.* 525 (1967), where we considered this same will and concluded that the will was "oriented toward testator's widow and children, not toward possible remaindermen." *Id.* at 527. Accordingly,

although the will did not specifically deal with such distributions, we determined that allocation to income was in keeping with the testator's probable intent to provide adequately for his family during their lifetimes and at the same time to preserve the principal for the remaindermen. *Id.* at 527–528. See *Wilson v. Flowers,* 58 *N. J.* 250, 260–263 (1971); *Fidelity Union Trust Co. v. Robert,* 36 *N. J.* 561 (1962). Thus, the trial court properly allocated the stock distributions by Chase Manhattan Bank and Consolidated Foods Corporation to income.

■ The remaining question is whether James Conway is entitled to all of the income and interest accumulated in the William F. Conway trust since the death of his sister Mary Rogers on November 20, 1968, or whether his sister's share should be treated as principal and held to be distributed to the remaindermen at his death. The trial court held that since the gifts to the children were in severalty and since there was no evidence that the testator intended to make a class gift, income to which Mary Rogers would be entitled if living should be treated as principal. We are unable to agree with this determination. Although it is true that William Conway provided that his children should each receive $2,000 a year ($500 quarterly) from the income of his trust, he also granted his wife the power to increase the amount to either or both of their children. This reflected the confidence which William Conway had in his wife to evaluate the needs of her children. As Judge Foley noted in an earlier construction of this will:

The entire structure of William F. Conway's will breathes a confidence in his wife to carry on the providing for his family in his absence. It is significant, indeed, that while he nominated a corporate fiduciary as co-trustee, he carefully refrained from granting to it the power to determine the necessity for, or the propriety of, increasing the relatively modest grants of income to the children. Seemingly, he felt it best to leave that to the respected judgment of his wife, certain that in her day she would appraise and evaluate their needs, and their ability to put the fruits of his efforts to good purpose after both of them nad passed along. One cannot but feel that the

absolute discretion which husband thus granted to wife was the result of a thorough understanding between them, and this is reflected in the scope of the power of appointment in his will and the manner of the exercise of it in hers. His mention of "corporation or corporations" and the identity of her residuary legatees plainly imply that she did what he wanted her to do, and did so because she knew what he wanted. 29 *N. J. Super.* 598, 601–602 (Cty. Ct. 1954).

In exercising her power, Isabelle Conway granted her children the right to receive all interest and income. There is no doubt that this was in keeping with the power given her by her husband and thus furthered his intent to preserve the principal for the remaindermen selected by his wife, while at the same time maximizing the benefits of the income for their family.[2] In short, Isabelle served as her husband's surrogate and we believe her exercise of her power shows an intent to place family before remaindermen.

█ We conclude that it was Isabelle's probable intention in exercising her power that her son, James Conway, should as the lone survivor of the trust on the death of his sister receive all income and interest for the remainder of his life. The result we have reached accords with the approach taken by the Restatement of Trusts which would imply cross remainders between life beneficiaries even in the absence of some indication of intent to do so on the thesis that such a result is most likely to comport with the probable intent of the testator. *Restatement, Trusts 2d,* § 143, p. 302:

(2) If a trust is created under which the income is payable to two or more beneficiaries and the principal is payable to another on the death of the survivor of the income beneficiaries, and one of them dies, the survivor or survivors are entitled to the income until the death of the last survivor, unless the settlor manifested a different intention.

---

[2]The conclusion that testator intended to provide first for his family during their lifetimes is buttressed by the provision in paragraph Sixth of his will in which he designated his wife as remainderman under the trust should the children predecease her. He no doubt had in mind that she, through her own will, could then leave the remaining trust assets to the charities she eventually selected.

See also *Restatement, Property* § 115, p. 359; 2 Scott, *Trusts,* § 143, p. 1097–99 (1967). Naturally, where, as here, the attribute of survivorship is in furtherance of what we perceive to be the dominant plan and purpose of testator's will as carried out by his wife through the exercise of her power, we do not hesitate to imply cross remainders.

The judgment of the court below is modified in accordance with this opinion.

*For affirmance in part and reversal in part*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.